(Decided 20th January, 1871.)

---

John T. Johns *vs.* Doe, on the demise of Thomas Harris Hodges and Sarah W. Hodges, his Wife.

*Construction of section 309 of Article 93 of the Code of Public General Laws — Last Will and Testament.*

A will executed before the 1st of June, 1850, is not embraced within the provision of the 309th section of Article 93 of the Code of Public General Laws, and real estate, of which the testator died possessed, acquired subsequently to the date of the will, will not pass to the residuary devisee, but will descend to the heirs-at-law of the testator, as property of which he died intestate.

Appeal from the Superior Court of Baltimore City.

This was an action of *ejectment* brought by the appellee against the appellant, to recover one undivided third part of a lot of ground in Saint Paul street, in the city of Baltimore. Both parties claimed under Rich'd Johns, who died in June, 1869, seized in fee of the land in question, which he acquired by purchase, and which was conveyed to him by deed of the

11th of June, 1867. Richard Johns left a last will and testament duly executed to pass real estate, on the 13th of July, 1849, in which after making provision for his two sisters, Mary W. Love and Sarah W. Hodges, by specific devises, he gave all the rest and residue of his estate, real, personal and mixed to his brother, the appellant. The will itself was silent as to the property which the testator might thereafter acquire.

At the trial prayers were offered presenting the question, whether the land in controversy passed under the will of Richard Johns to his residuary devisee, or descended to the heirs-at-law of the testator, as property of which he died intestate.

The Court adopted the view of the plaintiff, that the will did not operate on the after-acquired real estate of the testator, and instructed the jury accordingly.

The verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Arthur W. Machen*, for the appellant.

The *intention* of the testator that the property should pass is manifested by the comprehensive terms of the residuary clause: "All the rest, residue and remainder of my estate, real, personal and mixed;" and in retaining a will of such tenor to the time of his death, unrevoked, he plainly showed that he did not mean to die intestate as to any part of his property. But the appellee contends that this intention cannot have effect, owing to the fact that the lot of ground in question was not owned by the testator at the time of the making of the will, but was purchased subsequently. And although the old rule of law, thus operating to defeat the intention of testators, was annulled by the Act of 1849, ch. 229, which undoubtedly, while it existed, made the will in

question capable of passing all the lands the testator should be seized of at the time of his death, they claim that the Act of 1849 itself was repealed by the Code, and the rule of the common law revived as to all wills executed before the first day of June, 1850.

On behalf of the appellant it is contended, that the Act of 1849 has not been repealed, but is substantially re-enacted in the Code. This is the only issue in the case.

The Act of 1849, chapter 229, consisted of three sections. The first section found a place in the Code as section 309 of Article 93. Although a slight change of the phraseology of the latter part of the first section was made in condensing it for the Code, it was conceded in the Court below, that the original first section of the Act of 1849 and the section 309 of Article 93, which is its representative in the Code, are identically the same *so far as the present question is concerned.*

The Act of 1849, chapter 229, has been interpreted by this Court, and by a series of decisions, it has been held that the law embraced wills made before, as well as after the 1st of June, 1850. *Magruder and Tuck vs. Carroll,* 4 *Md.,* 335; *Alexander vs. Worthington, et al.,* 5 *Md.,* 471; *Wilson, et al. vs. Wilson, et al.,* 6 *Md.,* 487.

While admitting that these decisions establish the construction to be given to the Act of Assembly, it is contended by the appellee, that they do not apply to the interpretation to be given to the section of the Code, for the reason that the second section of the Act of Assembly has not been incorporated into the Code, and that it was this section, which in aid of the first, caused the construction to be placed upon the first which was given to it by the Court of Appeals.

In other words, conceding that if the second section, like the first, were in the Code, the old construction of the first section would continue, the appellee claims that the fact of the omission of the second section requires, or authorizes, a different construction to be put upon the section as it stands.

Section two of the Act of Assembly could have no proper place in the Code. Its whole object being to provide for the case of persons who should die between the passage of the law (the 22d day of February, 1850,) and the 1st day of June, 1850, and all that class of cases being definitely and forever disposed of as soon as June 1st, 1850, was reached and passed, it would have been idle, and worse than idle, to re-enact it in 1860.

The omission of the obsolete second section being thus accounted for, is there any principle of law which justifies an alteration of the meaning of the first section? The second was as obsolete, and as much a nullity for all practical purposes, in 1859, as it was on the 14th of February, 1860, after the Code went into effect. But does the other section which had, down to the adoption of the Code, a well understood construction, fixed by a series of decisions of the Court of Appeals, lose its old meaning upon being made a part of the Code? The Code is not to be interpreted as a new law; the judicial construction which had been given to the original statute was as much a part of it as its letter; and when the statute was substantially adopted into the Code, it was adopted with the received construction, and now retains the same meaning and effect.

From 1854 to 1860, it was universally understood that by the law of Maryland, as altered by the Act of 1849, every last will, no matter when executed, of every testator then living, was capable of passing all the lands of the testator, whether acquired before or after the making of the will. The Act not only established a new rule of property, but, by abolishing the former and purely technical rule, brought the law into conformity with the ordinary reason of mankind, and promised to gratify the intention of testators which the common law had too often defeated. Perhaps no change in the law was ever more called for, or more acceptable.

The argument upon the other side, and the ruling of the learned judge below, rest on the postulate, that the same

method of interpretation is to be pursued in respect to a Code as to a new statute; but there is a great weight of authority against this assumption. *Taylor vs. Delaney*, 2 *Caine's Cases in Error*, 151; *Yates' Case*, 4 *Johns.*, 359. In the matter of *Brown*, 21 *Wend.*, 319; *Douglass vs. Howland*, 24 *Wend.*, 45, 48; *Gaffney vs. Colville*, 5 *Hill*, 574; *Goodill vs. Jackson*, 20 *Johns.*, 722; *Dominick vs. Michael*, 4 *Sandf.*, 409; *Ash vs. Ash*, 9 *Ohio, N. S.*, 387; *Conger vs. Barker*, 11 *Ohio, N. S.*, 13; *Duramus vs. Harrison*, 26 *Ala.*, 330; *Sartor vs. Branch Bank at Montgomery*, 29 *Alabama*, 583; *Bank of Mobile vs. Meagher*, 33 *Ala.*, 622; *Code of Alabama* 1853, *p.* 59; *Panamore vs. Taylor*, 11 *Grattan*, 220, 242; *Code of Virginia* 1849, *p.* 800; *Greenwood vs. Greenwood*, 28 *Md.*, 369; *McKee vs. McKee*, 17 *Md.*, 359; *Bank for Savings vs. The Collector*, 3 *Wall.*, 495, 413.

*Stewart Brown* and *Geo. Wm. Brown*, for the appellee.

The first section of the Act of Assembly of 1849, did not stand alone; there was another additional provision, viz: the second section. And this Court found it necessary, in ascertaining the intent of the Legislature, to give effect to this section also, and it held that these were not independent provisions, but that they must be construed together, and that thus taken together, they constituted a new rule of *construction* for wills, which rule, beginning to operate on the 1st of June, 1850, would apply as well to wills made before as to wills made after that date.

This was the result of their decisions, in effect, interpreting the second section (in connection with the first,) as if it had read:

"And this Act shall apply to the wills made before the passage of this Act, of all persons who die after June 1, 1850."

The rule of construction contended for by the appellant is wholly inadmissible, because it maintains that a clear and explicit provision of the Code shall be construed to have a

meaning entirely at variance with its plain language, by an unauthorized interpolation therein of a legal inference drawn from the second section of the Act of 1849, ch. 229, although the section itself is repealed by the Code, and although the . correctness of the inference was so doubtful that the Supreme Court of the United States and the Court of Appeals of Maryland, arrived at diametrically opposite conclusions in regard to it.

If this is the correct view of the Act of 1849, and of the effect of the judicial interpretation thereof, then the appellee maintains that the Legislature, in adopting the Code, (wherein the language of the first section of said Act is not only modified, but the second section is entirely left out,) intended to change the law in this respect.

Sufficient reason, indeed, can be found for this change in the controversy between this Court and the Supreme Court of the United States, of which the codifiers and the Legislature were well aware.    And, besides, it was the declared and intended effect of the Code in the Act adopting it, that the Code should be, not a mere revision of the statutes, like those of some States, with the object of simplifying and altering the language without intending to alter the law, but that it should be " in lieu of and as a substitute for all the Public General and Public Local Laws heretofore passed." *Act of 1860, ch.* 1; *Mayor, &c., of Frederick vs. Groshon,* 30 *Md.,* 436.

In view of such a material change in the language of a statute, as that now under consideration, and with such well grounded reason for such a change, it will not do to invoke a principle applied by some New York cases to their revised statutes, (which statutes do not expressly repeal previous legislation,) viz : that in a reënactment of an old statute or a revised Code, " a *mere* change of phraseology shall not be deemed a change of the law, unless such change of phraseology evidently purports an intention in the Legislature to change the law."    For even if this could be applicable to

Johns *vs.* Doe, *ex dem.,* Hodges and Wife.

such a Code as ours, (with a declared intention of repealing everything not embodied therein;) such a principle, according to the leading case, which all the rest have followed— *Taylor vs. Delaney,* 2 *Caine's Cases in Error,* 143, 151—is expressly stated to be applicable only to a case of doubt, in the construction of the new statute or Code; and the provision of the Code before us can itself raise no doubt. *Leonard vs. Wiseman,* 31 *Md.,* 204.

For the same reason it will not do to say, that the repeal of the second section makes no difference, because, inasmuch as the time had elapsed during which it was to operate, there was no reason why it should have been inserted in the Code.

Because, even if this were so, looking at the second section independently, and as simply embodying and providing for an excepted case, yet, if the Legislature intended to make it clear that the judicial interpretation of the Act of 1849, should be incorporated into the Code, it was necessary and proper for the Legislature to have added to what is now there, if not the language, at least the judicially declared effect of the second section, viz: "That this provision should apply to wills made before June, 1850."

And if these views are correct, the judicial interpretation of the Act of 1849, can have no bearing upon the Code, changed, as it is, in language and substance, and the decisions made upon said Act, can only serve to illustrate the change that has been made, and demonstrate the propriety of such change.

STEWART, J., delivered the opinion of the Court.

Richard Johns, by his will, duly made and executed the 13th of July, 1849, devised to his brother, John T. Johns, all the residue of his estate, real, personal or mixed.

He acquired the property in dispute by deed of the 11th of June, 1867, and died in June, 1869.

John T. Johns, under the will, claims the entire property as the residuary devisee of his brother, and the ejectment was

brought in this case, against him, for an undivided third part, claimed by his sister, as one of his heirs-at-law, upon the ground that Richard Johns died intestate as to this property, and that it descended to his heirs-at-law.

By the law existing when this will was executed, the real estate acquired by the testator afterwards, was not controlled by the will, but descended to his heirs-at-law.

The Act of 1849, chapter 229, changed the law in this respect, and after the 1st of June following, except where wills had been executed before this law, by persons dying prior to the 1st of June, 1850, *they were to be construed* with reference to real or personal estate, to take effect as if made on the day of the death of the testator, unless a different intention was manifest from the will.

The Court of Appeals of this State, and the Supreme Court of the United States, entertained different views as to the construction of this Act.   See *Magruder vs. Carroll,* 4 *Md.,* 355 ; *Alexander vs. Worthington,* 5 *Md.,* 471 ; *Wilson vs. Wilson,* 6 *Md.,* 487 ; *Carroll vs. Carroll's Lessee,* 16 *Howard,* 275.

It was held by this Court, that the provisions of the Act extended to all wills, except those excluded by the 2d section.

Thus stood the law, as interpreted by this Court, when the 93d Article, section 309 of the Code, was adopted.   It is maintained by the appellee, that this provision changed the rule of construction as to wills made before the 1st of June, 1850.   This was the view of the Court below, the correctness of which we are required to determine in this case.

As the testator executed his will prior to the Act of 1849, and died after the 1st of June, 1850, the will is subject to the operation of the rule of construction, unless that rule has been modified by the provision of the Code.

There is no doubt, if Richard Johns had died before the enactment of this provision of the Code, and after the 1st of

June, 1850, under the decisions of this Court, the rule would be applicable to his will; but, as he survived, and acquired the property in dispute after the enactment of the Code, and the execution of his will, it must be interpreted by the legislation existing at the time of his death, when his will, before ambulatory, became operative.

It appears that by reason of the 2d section of the Act of 1849, the Court of Appeals was induced to decide that the law applied to all wills, and not alone to those made after the 1st of June, 1850, when the rule of construction was to be applied.

The language of 93d Article, section 309, of the Code, is not precise nor full, but leaves much for construction.

It is apparent, whatever may be its interpretation, that from its prescribing the 1st of June, 1850, as the time from which it was to operate, that reference was had to the Act of 1849, by which the same time had been prescribed for its rule of construction to apply. This coincidence of dates, as to the same subject-matter, under all the circumstances, was not accidental.

There is no doubt, in the construction of the Code, careful examination of the preëxisting legislation, and the judicial construction thereon, is necessary.

The Code was declared, by the law adopting it, to be a substitute for the whole body of the statute law, local and general, and it certainly has effected very material changes in the law of the State.

The Legislature designed to preserve all that was needful, and to discard what was obsolete or inapplicable, and relieve the statute-book from all useless matter.

Whilst the Code superseded the preëxisting laws, yet, in many cases, by comparing its provisions with the previous statutes in *pari materia*, a better opportunity may be afforded to ascertain what is the existing law as enacted by the Code. Where its language is the same as that of any antecedent law, the well established construction, is to be regarded.

If the terms are substantially different, they must have their plain and obvious interpretation, and not be strained to conform to previous legislation.

If the provision is doubtful, reference to the antecedent law may aid in determining its true intent and purpose.

Where the language is clear, there is no occasion to resort to other aids in ascertaining the meaning.

We take it, that the Code is to be understood and expounded, according to the law establishing it, as a substitute, and such meaning must be given to the language employed, as a just construction will warrant.

To apply our views to the case in question. Whilst the Act of 1849 has been repealed, and the provision in the Code substituted in its place, we can better ascertain the meaning and effect of the provision by an examination of the Act of 1849, with the judicial construction which has been given to it.

Assuming that the provision in the Code is substantially the same as the first section of the Act of 1849, without qualification by the terms of the second section, what is the fair interpretation to be given to the provision as it stands, having the previous judicial construction of the Act to aid us?

The second section of the Act of 1849 had become obsolete, and, of course, there was no occasion for its incorporation into the Code, but as a judicial construction had been given to the first section, from a consideration of the terms of the second section, the omission of the second section in the Code, without the employment of plain terms importing as much as the second section, explanatory of the meaning of the provision, is a material circumstance, to be considered in construing the provision in the Code.

Where the Code has left out the second section and substituted alone, in substance, the first section, without qualification, the judicial interpretation given to the Act of 1849, with all of its sections, cannot be applicable to the first section without the addition of the second section.

The Act of 1849 had provided that wills executed after 1st of June, 1850, should be construed to govern all the property comprised therein. The provision of the Code regarded this rule of construction as applicable at that period, and by its terms declared it should operate upon all wills executed after the 1st of June, 1850.

Thus the Act of 1849 and the provision of the Code would be uniform in this respect. The Court of Appeals had declared in the case of *Magruder & Tuck vs. Carroll, et. al.*, 4 *Md.*, 348, "if the Act (1849) were constructed of the first section, we would not experience any difficulty in deciding that it was intended, and did, in fact, operate only on wills executed after the 1st of June, 1850; and this interpretation would be in consonance with the well established principle that statutes are not to have a retroactive effect, unless it be perfectly obvious it was the intention of the Legislature. But the great difficulty arises out of the second section."

If we adopted the construction given to the first and second sections taken together, where the first section alone is re-enacted, we should do violence to the provision in the Code, and interpolate a meaning derived from the second section of the Act of 1849, not warranted by its language, and repugnant to the judicial exposition of the Act of 1849, without the second section.

We should, in fact, judicially give force and effect to the Act of 1849, with all its sections, when the Code has simply but substantially incorporated but the first section, without qualification.

If the Code had designed to recognize and re-enact the law of 1849 as adjudicated by the Courts, distinct and plain language would have been used. The codifiers, and the Legislature adopting their Acts, must be presumed to have knowledge of the construction given to the Act of 1849, and certainly they could not have intended to leave so important a subject in a doubtful condition. They determined to disembarrass this first section of the Act of 1849 from all ambig-

uity. This is a reasonable presumption, and we must construe the provision in the Code according to its own obvious purport.

From a fair construction of its language and from reference to the provisions of the Act of 1849, and the judicial interpretation thereof, it only operates over wills executed since the 1st of June, 1850.

The will in question having been executed before, is beyond its reach and must be governed by the law as it existed when the will was made, independent of this provision of the Code. The testator is presumed to be aware of the law existing and operating when his will was made, and his will has the benefit of that law. By that law the property in dispute having been acquired after the making of the will in 1849, is not embraced by the will and does not vest in the residuary devisee, but descends as property of which the testator died intestate to his heirs-at-law. The plaintiff below being entitled to an undivided third part, had the right to recover accordingly.

*Judgment affirmed.*

(Decided 20th January, 1871.)

BARTOL, C. J., delivered the following dissenting opinion, in which GRASON, J., concurred:

The only question in this case is whether the lands in controversy passed under the will of Richard Johns to his residuary devisee, the appellant, or whether he died intestate thereof.

The will was executed in due form of law to pass real estate on the 13th day of July, 1849; the land in dispute was acquired by the testator on the 11th day of June, 1867, and he died seized in fee thereof in June, 1869. The intention of the testator to devise his whole estate is manifest on the face of the will; and under its provisions the property in question passed to the residuary devisee, unless by law it can operate only on land owned by the testator at the time it was made.

Johns *vs.* Doe, *ex dem.*, Hodges and Wife.

By the ancient and long established rule of law existing in Maryland at the date of the will, while such instruments were ambulatory as to personal property, and were in respect to such property construed as if made at the time of the testator's death; with reference to real estate, they were construed as speaking only on the day of their date, and were incapable of passing lands subsequently acquired.

By the operation of that rule the real intention of testators was often defeated; for it is well known that according to the common apprehension of mankind a will, being an instrument operating only after the testator's death, might naturally be supposed to speak and take effect, as of that time, with reference to all property embraced in it as well real as personal. It was therefore reasonable for the Legislature to change the law, and establish a new rule more conformable to reason, whereby the real intention of testators might be carried out. Such a change had been made by Act of Parliament in England some years before; and had been introduced by legislation in several of our sister States.

Accordingly at December session, 1849, by chapter 229, passed on the 23d of February, 1850, it was enacted as follows:

Sec. 1. " That every last will and testament executed in due form of law, after the first day of June next, shall be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed on the day of the death of the testator or testatrix, unless a contrary intention shall appear by the will.

Sec. 2. " That the provisions of this Act shall not apply to any will executed before the passage of this Act, by any person who may die before the first day of June next, unless in such will the intention of the testator or testatrix shall appear that the real and personal estate which he or she may own at his or her death should thereby pass.

Sec. 3. "That this law shall take effect on the first day of June next."

This Act came before the Court of Appeals for construction in *Magruder & Tuck vs. Carroll,* 4 *Md.,* 335. The will of Michael B. Carroll, then under consideration, had been executed in 1837, the testator died in August, 1851; and the question arose whether the will could operate to pass lands acquired by the testator after its date.

The Court decided unanimously that the will came within the operation of the first section of the Act of 1849—and passed lands acquired subsequent to the date of its execution.

The same question again came before the Court of Appeals in *Alexander vs. Worthington,* 5 *Md.,* 471. There the same will was under consideration, and the Supreme Court of the United States having given a different construction to the statute; the subject was very carefully and elaborately examined, and the former decision in *Magruder & Tuck* was adhered to and affirmed by the whole Court.

Again the question arose in *Wilson vs. Wilson,* 6 *Md.,* 487, and it was again decided by a full bench, that the Act of 1849, operated upon wills made before its passage, where the testator died after the first day of June, 1850, and that under such wills after-acquired lands would pass.

Thus by three successive decisions of the Court of Appeals was the construction of the Act of 1849, definitively and finally settled, and so the law has remained unquestioned ever since.

Such was the state of the law when the Code was adopted, and it cannot be questioned that if the will before us had gone into operation after the first day of June, 1850, at any time before the adoption of the Code, it would have been effectual to pass all the real estate of which the testator died seized, without any regard to the question whether he owned it at the time the will was executed or acquired it afterwards.

But the appellees' counsel has contended that the law has been changed by the Code, so as now to embrace only wills executed since the 1st day of June, 1850, leaving all wills executed before that time, subject to the old rule which was

in existence before the passage of the Act of 1849, and which had been abrogated by that Act; and consequently that the will before us having been made before the 1st day of June, 1850, is ineffectual to pass the land in controversy acquired after its date, however plainly the intention of the testator that it shall have that effect may be expressed on its face.

Such a change in the law, after the beneficial rule established by the Act of 1849, had been in operation for ten years, universally acquiesced in and approved, would seem to be very unreasonable. It was suggested in the argument that a motive for the supposed change may be found in the fact that there existed a conflict of decisions between the Court of Appeals and the Supreme Court as to the true construction of the Act of 1849, and that the codifiers and the Legislature intended to make the law in terms conformable to the construction of the Act given by the Supreme Court. But in my judgment the appellees' counsel is in error when he supposes that at the time the Code was adopted there existed any conflict of decisions as to the true construction of the Act.

Upon such a question, involving only the construction of a local statute, no conflict could exist between the Supreme Court of the United States and the Court of last resort in Maryland; because the decision of the latter is final and conclusive as well upon the Courts of the United States, as upon the State Courts, and their authority has been fully recognized by the Supreme Court itself in numerous decisions, among them may be cited the following. *Suidam vs. Williamson*, 24 *Howard*, 427; *Leffingwell vs. Warren*, 2 *Black*, 599; *Christy vs. Pridgeon*, 4 *Wallace*, 196, 203; *Randall vs. Bingham*, 7 *Wallace*, 541; *Prov. Ins. vs. Massachusetts*, 6 *Wallace*, 630; *Gist vs. The State*, 9 *Wallace*, 35.

It is true that after the decision in 4 *Md.*, upon Carroll's will, the Supreme Court decided the same question in a different way; justifying their action in disregarding the decision of the Court of Appeals, on the ground that the latter

was pronounced in a case in which the question did not properly arise upon the record, and therefore in their opinion it was *obliter dictum*. Without now stopping to consider whether that view taken by the Supreme Court was correct, there can be no doubt or question whatever as to the binding and conclusive effect of the subsequent decisions by the Court of Appeals, in *Alexander vs. Worthington*, 5 *Md.*, and *Wilson vs. Wilson*, 6 *Md.*, in which the question was distinctly presented and clearly decided.

By these decisions all conflict of opinion was set at rest, and the construction of the first section of the Act of 1849, was finally settled, as embracing all wills whether made before or after the passage of the Act, which might go into effect by the death of the testator after the 1st day of June, 1850.

And I may be permitted to say, after carefully examining the opinions rendered by the Supreme Court, and the Court of Appeals in the cases arising upon Carroll's will, that in my judgment the construction given by the Court of Appeals to the Act of 1849, was correct, and that of the Supreme Court was erroneous.

But whatever opinion may be entertained on that subject, the question was in its nature one upon which the decision of the Court of Appeals is final, and it had been conclusively set at rest by the decisions to which I have referred. When the Code was adopted therefore no conflict existed as to the true interpretation of the Act of 1849, or any doubt that this will would fall within the operation of the first section of the Act.

But it has been argued that it is not within the provision of the Code, because that is to be construed as embracing only wills made since the first day of June, 1850.

This position is based upon the words of the Code considered by themselves, and it seems to me, disregards altogether the settled construction which had been given by the Court of Appeals to substantially the same language in the Act of 1849.

I think it was not disputed in the argument, as certainly it cannot be denied, that the provision in the Code, so far as the question before us is concerned, is substantially the same as the first section of the Act of 1849. It is as follows:

Article 93, section 309. "Every last will and testament executed in due form of law, after the first day of June, eighteen hundred and fifty, shall pass all the real estate which the testator had at the time of his death."

Now how is this section to be construed? Is it to be interpreted as if it was a new statute, containing a declaration of the legislative will upon the subject to which it relates, then expressed for the first time, and without regard to the antecedent laws and their established construction? Surely not; to construe the Code in that way, would be contrary to all precedent and against reason; and would lead to the greatest uncertainity and confusion. Such a rule of construction has never been applied to a Code; which like ours was intended as a revision or embodiment of the preexisting statutes, and ought not to be construed as changing the law except where an intention to do so is manifest; a mere change of phraseology ought not to be construed as effecting a change.

The rule to be observed in the interpretation of a Code, was laid down in the leading case of *Taylor vs. Delaney*, 2 *Caine's Cases in Error*, 151, and was thus clearly expressed by Judge SPENCER:

"My opinion," said he, "is founded on this proposition, that where the law, antecedently to a revision, was settled either by clear expressions in the statutes or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such change of phraseology evidently purports an intention in the Legislature to work a change. A contrary construction might be productive of the most dangerous consequences."

That decision was concurred in by KENT, then Chief Justice, and afterwards followed by him in *Yate's Case*, 4 *Johns.*,

359. It was re-affirmed in *Brown's Case,* 21 *Wendell,* 319, and in *Douglas vs. Howland,* 24 *Wendell,* 45–48, where the reasons upon which the rule is based are presented in a very able opinion by Judge COWAN.

The same rule was recognized in *Gaffney vs. Colville,* 5 *Hill,* 574, by the Supreme Court of New York, and in several other cases in that State.

In *Ash vs. Ash,* 9 *Ohio, N. S.,* 387, the Court said: "It is a well-established rule, that in putting a construction upon a revised statute, the mere change in the phraseology does not work a change in the established interpretation of the former statute, unless it evidently appears that such change was intended by the Legislature."

In *Conger vs. Barker,* 11 *Ohio, N. S.,* 13, the same rule was recognized.

In Alabama, a Code went into effect in 1853. In 1855, the Supreme Court, in construing it, said: "We must take it for granted, that at the time the Code was adopted, the Legislature knew the construction which had been placed on the former statutes, above referred to, by the several decisions above cited; and with this knowledge the Legislature has reënacted in the Code provisions which are substantially the same as those contained in the former statutes; such a reënactment is a legislative adoption of the known construction of those provisions." *Doremus vs. Harrison,* 26 *Ala.,* 330.

This rule of construction is a reasonable one, and has been uniformly followed in every State where a Code has been adopted. Many other cases might be cited, but this is unnecessary. Some of them, to which I have not here referred, are cited in the brief of the appellant.

The application of this rule to the present case, it seems to me, conclusively settles the question as to the proper construction of the 309th section of the Code.

The whole difficulty grows out of the ambiguity in the language, creating a doubt whether the words, "*after the first day of June,* 1850," refer to the execution of the will or to

its operation and effect. But it must be remembered, that the 1st section of the Act of 1849 contained the same ambiguity. When that was removed by judicial construction, the meaning of the law was no longer ambiguous, and when it was incorporated into the Code, in substantially the same language, it ought, upon every sound principle of construction, to be understood as meaning the same thing.

It would be a very unsafe rule to disregard established precedents, and to interpret the Code according to the literal meaning of the words. Being intended as a more concise embodiment of the statutes, its language must often be susceptible of various and uncertain construction, even greater than the statutes themselves. No better example could be given of the error of construing the Code in that way, than is presented by the section before us. If understood literally, its effect would be to make every will pass the real estate of the testator without regard to its provisions, whether they relate to real estate or not, and to prevent the possibility of any one who leaves a will duly executed, to die intestate of his lands. Such a construction would be wholly inadmissible; the provision, as all agree, must be interpreted in that respect in conformity with the preëxisting law, and whether the real estate passes under the will or not, must depend, not exclusively on the words of the Code, but upon the terms of the will itself.

The only safe rule is to read the provisions of the Code in the light of the preëxisting statutes, and where these have received judicial construction, to give to the Code the same construction, unless the intention of the Legislature to change the law should be clear and manifest. In comparing the provisions of the Code with those contained in the Act of 1849, I do not discover any such intention. On the contrary, they are substantially the same, with scarce a change in the phraseology. The evident intention was to incorporate in the Code the 1st section of the Act. But the 2d section of the Act has been omitted from the Code, and from this it has been argued

that a change in the law was intended. To understand this argument, it is necessary to recur to the decisions by which the judicial construction of the Act of 1849 had been settled. The 1st section was the only part of the Act applicable to the cases. That was ambiguous, and the doubt arose whether the Legislature intended by the words, "after the first day of June next," to refer to the time of the execution of the will, or to the time when the new rule of construction should apply—that is, whether they referred to the date of the will, or to the time when it might go into effect by the death of the testator. Looking at its language, it might, with equal propriety, be read either way.

To solve the doubt, the Court referred to the 2d section, which, while it provided for a different class of wills, furnished a key to the interpretation of the 1st, and enabled the Court to fix its true meaning, and ascertain the real intention of the Legislature. Now, the argument is, that inasmuch as the 1st section only is contained in the Code, it is to have a different interpretation. It seems to me this is not a sound argument. The 2d section could have no possible place in the Code; to have put it there would, it is conceded on all hands, have been idle and useless; it referred exclusively to a class of wills, executed before the Act was passed, and which went into effect ten years before the Code was adopted. In the Code, it could have no practical operation whatever, and its omission, therefore, cannot have the effect of changing the meaning of the 1st section, which has been incorporated into the Code, and the interpretation of which had been settled by judicial construction.

For these reasons, I am of opinion that the lands in controversy passed to the appellant under the will of Richard Johns, and that the ruling of the Court below was erroneous, and the judgment ought to be reversed.