No. 29,132.

The Chicago, Rock Island & Pacific Railway Company, *Appellant*, v. D. J. Nichols, as an Individual and as County Treasurer of Jewell County, Charles E. Sweet, V. A. Jones and George L. Dempsey, as Individuals and as the Rural High-school Board of District No. 5, in Jewell County, and Rural High-school District No. 5, in Jewell County, *Appellees*.

(287 Pac. 262.)

Opinion filed May 3, 1930.

*Luther Burns, J. E. DuMars*, both of Topeka, *R. W. Turner* and *D. F. Stanley*, both of Mankato, for the appellant.

*D. M. McCarthy* and *L. E. Weltmer*, both of Mankato, for the appellees.

The opinion of the court was delivered by

Jochems, J.: Plaintiff sought to recover taxes paid under protest. Defendants filed an amended answer alleging grounds justifying the levy. Plaintiff filed a demurrer to this answer which was overruled, and from this order plaintiff appeals.

Plaintiff alleged that the defendant rural high-school district No. 5 of Jewell county could not lawfully levy more than the six-mill levy on taxable property within its district for general purposes and that it disregarded this limitation and made a levy of eight mills for the year 1927. Plaintiff alleged further that an additional one and one-half-mill levy was made for interest and sinking-fund purposes, but does not contest this additional levy of one and one-half mills and makes no point concerning it. Plaintiff paid its taxes under protest and brought this action to recover the amount of the two mills, alleged by plaintiff to have been unlawfully levied for general purposes.

In their answer defendants admitted the levy of eight mills for general purposes as alleged by plaintiff, but set up that the defendant district was acting under the provisions of R. S. 79-1937 and that in pursuance thereto proper notice had been given and a vote had upon the question of the increased levy at the annual meeting of the defendant school district. The defendant district alleged full compliance with the procedure indicated by that statute and that the levy of eight mills had been made in accordance therewith and with the provisions of chapter 237 of the Laws of 1925.

The appellant contends upon appeal that the amended answer of defendants showed upon its face that the levy was excessive and unlawful and that its demurrer thereto should have been sustained because the answer did not set forth facts showing a defense to plaintiff's petition.

The appellant makes the contention that authority for the establishment of defendant rural high-school district is first found in chapter 311 of the Laws of 1915, which appears in R. S. 72-3501 to 72-3514, inclusive. R. S. 72-3506 states the limitation on taxes and was later amended by chapter 237 of the Laws of 1925. The amendment added in 1925, however, simply added a proviso relative to counties having a population of less than 8,000, but it is conceded that Jewell county, in which the defendant district is situated, has a population of approximately 16,000 and the amendment therefore does not apply.

The appellant contends that the sole question involved is this: Does R. S. 79-1937 extend to R. S. 72-3506 and authorize an increase in rural high-school districts over the six-mill levy fixed as a maximum?

It is pointed out that R. S. 79-1937 was originally adopted in 1909 as section 27 of chapter 245 of the Laws of 1909, and that R. S. 72-3506 was not adopted until 1915. Further, that inasmuch as the statute of 1909 (now R. S. 79-1937) did not establish or recognize rural high-school districts and rural high-school districts were not created until the enactment of chapter 311 of the Laws of 1915 (now R. S. 72-3506) it is manifest that the provisions of the law passed in 1909 could not apply to a subdivision of the state not created until 1915.

The appellees, on the other hand, contend that when the legislature in 1923 enacted the Revised Statutes and included both the act of 1909 and the act of 1915 in the revision it closed the doors to tracing legislative history of the acts for the purpose of construing them, except where such acts may be in conflict and irreconcilable. They contend that the two acts were reënacted in 1923 in the same session of the legislature as part of the same general revision and are therefore to be considered as acts passed at the same session of the legislature, and further, that the rule of construction, therefore, is that they may not be construed as inconsistent if they may fairly be read otherwise, citing *McMaster v. Gould*, 239 N. Y. 606, 147 N. E. 214, 40 A. L. R. 792. They contend further that regardless of whether the legislature had rural high-school districts in mind when it passed chapter 245 of the Laws of 1909, that when it enacted the Revised Statutes and incorporated therein both R. S. 72-3506 and R. S. 79-1937, it then necessarily had in mind rural high-school districts, and that it was the evident intent of the legislature that both should stand together and that the method provided in R. S. 79-1937 for increasing the maximum levy should also apply to rural high-school districts.

On the other hand, the appellant cites *Arkansas City v. Turner*, 116 Kan. 407, 226 Pac. 1009, wherein the second syllabus reads:

"Where conflicting and irreconcilable provisions of prior legislative acts are included in a revision and codification of the General Statutes, the legislative history of the separate conflicting acts should be traced, and the later enactment is to be regarded as the existing law, and the older of the conflicting and repugnant provisions, although carried forward into a revision of the General Statutes which was adopted and approved by the legislature, is to be considered as repealed by implication."

Is there anything conflicting and irreconcilable between the two acts? Can these sections be read together and consistently con-

strued to mean that the provisions of R. S. 79-1937, relating to the method by which a common-school district may increase its taxes beyond those limited by the act, be followed by a rural high-school district whose rate of tax is limited by R. S. 72-3506?

The fact that both sections appear in the 1923 revision is rather persuasive, but where, as in this case, the claimed authority does not clearly appear in the acts as reënacted in the revision we conclude that resort should be had to the history of the acts and to any other proper rules of construction to determine the true legislative intent.

Section 2 of article 6 of the Kansas constitution reads:

"The legislature shall encourage the promotion of the intellectual, moral, scientific and agricultural improvement by establishing a uniform system of common schools and schools of a higher grade embracing normal, preparatory. collegiate and university departments."

Under this provision of our constitution the legislature has created and established our system of common schools, and from time to time created schools of higher grade. In creating common and high schools the legislature has placed their management and conduct under subdivisions of the state known as districts. Since the constitution places the responsibility for providing a system of education upon the legislature, it logically follows that a school district created by the legislature has no inherent power of taxation. It must look to the legislature for its right to raise funds by taxation, and has only such power to levy, assess and collect taxes as is clearly granted by the legislature.

A few comparisons of the statute relating to common schools and to the statute relating to rural high schools will throw some light upon how the legislature has treated the two taxing districts.

R. S. 72-401 fixes the date of the annual meeting of common-school districts as the second Friday in April of each year at 2 o'clock p. m.

R. S. 72-3506 fixes the annual meeting of rural high-school districts for the election of officers at 2 o'clock p. m. on the day before that fixed for common schools, except as amended by chapter 237 of the Laws of 1929.

R. S. 72-406 fixes the amount of the tax levy for the ensuing year to be voted upon and fixed by the qualified voters of a common-school district.

R. S. 72-1014 provides that the clerk of the district board shall certify the amount of the taxes *voted by the annual meeting* to the county clerk.

R. S. 72-3506 further provides that the amount of the levy shall be fixed by the *rural high-school board* at its annual meeting held on the third Monday in April at 2 o'clock p. m., and also fixes the limitation on the taxing power of rural high schools. The clerk of the district certifies the amount of the levy to the county clerk.

In examining R. S. 72-3501 to 72-3514, inclusive (the rural high-school law), we note the following:

R. S. 72-3506: ". . . and the county treasurer shall collect and pay over such taxes in the manner provided by law for school districts."

R. S. 72-3507: "The rural high-school board . . . except as herein provided, shall have the powers prescribed by law for school-district boards. . . . Except as herein provided the laws relating to the issuing of school-district bonds shall apply to rural high-school districts formed in accordance with this act."

R. S. 72-3509: ". . . and an appeal from the action of the county superintendent . . . may be taken in the manner provided by law for an appeal in the alteration of school-district boundaries; and the county superintendents of public instruction shall have the same general supervision over rural high schools as they have by law over district schools, and rural high-school districts shall be governed as provided by law for school districts except as provided in this act."

These frequent references to the laws relating to common-school districts show clearly that in enacting the rural high-school law the legislature had in mind the laws relating to common-school districts. If, therefore, it had intended to grant the rural high-school districts the right to levy taxes in excess of those limited by R. S. 72-3506, as later amended by chapter 237 of the Laws of 1925 and chapter 237 of the Laws of 1929, would it not have inserted in that section a proviso somewhat as follows:

"*Provided,* That if, in the opinion of said board, the amount of taxes so limited by this act shall be insufficient for the needs of the district, then the question of an increased levy shall be determined in the same manner as by law provided for school districts."

Or by some other similar, explicit provision?

It should be noted further that this identical section R. S. 72-3506 has been before our legislature at two different sessions since the revision of 1923 was adopted. In 1925 that statute was amended

by chapter 237 of the Laws of 1925, by adding to the original section a proviso reading:

*"Provided,* That if said district is in a county or counties having a population of less than eight thousand each, said board may levy for all purposes not to exceed eight mills on the dollar."

That amendment had to do particularly with providing an increased levy in certain counties, but except as to that class of counties the legislature let the original limitation stand and did not provide any express method for increasing it. Again in 1929 the original section was amended by chapter 237 of the Laws of 1929. This amendment provided that the annual meeting might be held in the evening at 7:30 p. m. under certain conditions. The original section was otherwise reënacted as it appeared in the 1923 revision, but the provision relating to counties of less than 8,000 inhabitants, which was added in 1925, was omitted.

In addition to the two amendments in 1925 and 1929 the statute as originally enacted was amended by chapter 284 of the Laws of 1917 and chapter 52 of the Laws of 1920 so that since it was originally passed it has been hammered over four times by the legislature. Notwithstanding all this apparent care and solicitude over this law, it still stands with a fixed limitation on the amount of taxes a rural board may levy and no express method is provided by which this limitation may be thrown off and an increased tax levied. After all the working over this law has had at the hands of the legislature this court feels that it is without power to do any "judicial welding" and engraft on the law a clause which will enable rural high-school districts to throw off the express limitation of the statute. It is a question for the legislature and we propose to keep within the bounds indicated by our constitution. The legislature in its wisdom has seen fit to leave the limit at six mills. In 1925 an additional two-mill levy was permitted to rural high-school districts in counties of less than 8,000, so that it is manifest that the question of limitation of levy was then squarely before the legislature. It appears that the legislature has determined that it is the best public policy for rural high-school districts to let that limitation stand. We do not question its wisdom. Our citizens constantly lament "high taxes." It is generally recognized that the cost of education is the primary cause of increased taxes. This fact has doubtless been before the legislature on the numerous

occasions when this section of the rural high-school law has been before it. Doubtless the legislature can and did advance very sound arguments why the limitation should stand. In the repeated considerations of this law, which we have noted above, the legislature has seen fit to leave it as we find it. We must do likewise.

This court, in *Railway Co. v. Alexander*, 63 Kan. 72, 64 Pac. 978, said:

"It is contended by the defendants in error that the law, conferring as it does upon the various members of the graded-school-district board all the powers of like officers of ordinary district boards, and creating a separate entity for the purposes of managing a separate school, with authority to levy taxes, gives the power to such graded-school district to make within its bounds an additional levy not to exceed two per cent; that is, that it may levy as much as the original school district may, and this in addition to what the original district levies, and not that the total of both levies must be the limit fixed in section 6127, General Statutes of 1901. The court below took this view of the question. In this we do not agree." (p. 73.)

Again, in the same case, at page 74, this court said:

"We may say that the question is not one entirely free from doubt, but we cannot believe that the legislature would have left it in that condition had its purpose been to confer the right so largely to increase the burden of taxation. The authority to levy taxes is an extraordinary one. This is never left to implication unless it be a *necessary* implication. Its warrant must be clearly found in the act of the legislature. Any other rule might lead to great wrong and oppression, and when there is a reasonable doubt as to its existence the right must be denied. Therefore, to say that the right is in doubt is to deny its existence." (Citing authorities.)

The defendant school district did not have the right to levy more than the six mills for general purposes. Plaintiff is entitled to recover the excess levy to the amount of two mills. Plaintiff's demurrer to defendants' answer should have been sustained.

The cause is reversed with instructions to the trial court to sustain the demurrer to defendants' answer and for further proceedings in accordance with this opinion.

JOHNSTON, C. J., and MARSHALL, J., dissenting.