WELSH, Assignee, *v.* KUNTZ et al.

[No. 210, October Term, 1949.]

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON and HENDERSON, JJ.

*T. Hammond Welsh, Jr.,* with whom were *Welsh & Dyer* and *Paul L. Herring* on the brief, for the appellant.

*Robert W. Beall* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Section 2 of Article 66, Code Supp. 1947, provides that, except as therein provided, no mortgage to secure future loans or advances shall be valid unless the amounts thereof and the times when they are to be made shall be specifically stated in the mortgage. Section 3 of Article 66, Code 1939, provides that in Baltimore and Prince George's Counties no mortgage shall be a lien for any other sum of money than shall be specified therein to be secured thereby at the time of executing the same; but it does not contain the requirement that a mortgage to secure future loans or advances shall state the times when the future loans or advances are to be made. The question presented for our decision is whether Section 2 applies to Baltimore and Prince George's Counties.

The record in this case shows that Joseph Kuntz, Sr., and wife on May 19, 1948, executed a mortgage on a parcel of land in North Englewood to J. Victor Dickey and wife as security on a construction loan. While the mortgage recites that the mortgagors are indebted to the mortgagees "in the full and just sum of $7,500" as evidenced by a note for that amount, actually only part of that amount was advanced at the time the mortgage was executed, and the mortgagees promised to make

future advances at certain stages of progress in the construction of the building. Upon default by the mortgagors the mortgagees assigned the mortgage to T. Hammond Welsh, Jr., for the purpose of foreclosure. The assignee thereupon sold the property at auction on August 8, 1949, for $6,750 and reported the sale to the Court. Eisinger Mill and Lumber Company, Inc., grantee in two deeds of trust executed on the property as security for bills in the amount of $5,000, and Roger W. Eisinger, Sr., and Roger W. Eisinger, Jr., trustees named in the deeds, filed exceptions to the ratification of the sale.

The assignee and the exceptants stipulated that if Section 2 of the Maryland Mortgage Law applies to Prince George's County, the mortgage is void; but if Section 2 does not apply to Prince George's County, then the mortgage is valid and the foreclosure sale should be ratified. The chancellor held that Section 2 applies, and entered a decree sustaining the exceptions and declaring the mortgage and the sale void. From that decree the assignee appealed.

The chancellor relied on *White Eagle Polish American Building & Loan Ass'n v. Canton Lumber Co.*, 168 Md. 199, 178 A. 214, which was an appeal from the Circuit Court for Baltimore County. The Circuit Court held the mortgage void on the ground that it was a mortgage to secure future advances and it failed to comply with Section 2 of the Maryland Mortgage Law. But the Court of Appeals, finding that the mortgage recited a consideration of $30,000, and that the mortgagee gave the mortgagor credit for the full amount at the time of the execution of the mortgage, reversed the decree on the ground that the mortgage did not secure any future loans or advances. In the instant case the chancellor observed that in the Baltimore County case the building association made these contentions on appeal: (1) that the mortgage was not given to secure any future loans or advances, (2) that it was recorded in Baltimore County, and (3) that it was given to a building associa-

tion. The chancellor surmised that if the Court of Appeals believed Section 2 did not apply to Baltimore County, it would have said so, for that ruling also would have led to a reversal. But the fact that this Court decides to reverse on one ground does not imply that the other points were determined.

The cardinal rule of statutory construction is that statutes should always be construed to effectuate the intention of the Legislature. The manifest intention will always prevail over the rules of grammatical construction. On the other hand, a court is generally not at liberty to surmise a legislative intention contrary to the plain language of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intention which is not evidenced in the original form. *State Tax Commission v. Potomac Electric Power Co.*, 182 Md. 111, 115, 116, 32 A. 2d 382; *Smith v. Higinbothom*, 187 Md. 115, 125, 126, 48 A. 2d 754. Where there is doubt as to the meaning of a statute, the court will resort to the history of the enactment in search of the legislative intention. The fact that two acts, even though passed at different sessions of the Legislature, are re-enacted in a subsequent revision of the statutes does not preclude resort to the history of the legislation and the use of judicial construction to determine the legislative intention, where that intention is not clearly disclosed in the revision. *Chicago, R. I. & P. Ry. Co. v. Nichols*, 130 Kan. 509, 287 P. 262.

In the absence of statute, a mortgage given as security for future advances is valid when the advances are a part of the original agreement, and in such a case the lien will cover all future advances in preference to any claim of a junior encumbrancer with notice of the agreement. The common law has sanctioned mortgages to secure future advances as a useful method of providing for continuous dealings and for security for obligations to accrue at future times. *Goertz v. Backman*, 195 Md. 450, 74 A. 2d 3. In January, 1826, the Legislature

passed the first statute on the subject, entitled "An act to limit the operation and effect of mortgages." It provided that no mortgage executed after August 1, 1826, shall operate as a lien for "any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage, and be specified and recited therein, and particularly mentioned and expressed to be secured thereby, at the time of executing the same." Laws of 1825, ch. 50.

When the Maryland Constitutional Convention met in 1851, the Maryland statutes embracing all legislation from the time of the settlement of the Colony were scattered through more than forty volumes, and it was difficult to find the law because of the multitude of repeals and re-enactments. The Convention accordingly commanded the Legislature to appoint two commissioners to revise and codify the laws of the State. Md. Constitution of 1851, art. 3, sec. 17. In compliance with the mandate of the Constitution, the Legislature in 1853 appointed Otho Scott and Hiram McCullough as codifiers, and in 1860 adopted their Code and repealed all previous legislation of the State. Thus the 1860 Code was adopted as a substitute for all the public general laws then in force. *LaFontaine v. Wilson, to Use of Ugast*, 185 Md. 673, 680, 45 A. 2d 729, 732, 162 A. L. R. 1218. In that Code the Act passed in 1826 was codified as Section 2 of Article 64, entitled "Mortgages."

Meanwhile in 1859 the Court of Appeals held in *Wilson v. Russell*, 13 Md. 494, 71 Am. Dec. 645, that it was still unnecessary to state in a mortgage to secure future advances the length of time during which the advances were made. In 1872 the Legislature made the law more stringent by re-enacting Section 2 with the following additional provisions: "and no mortgage, or deed in the nature of a mortgage, shall be a lien or charge for any sum or sums of money to be loaned or advanced after the same is executed, except from the time said loan or advance shall be actually made, and no mortgage to secure such future loans or advances, shall be valid

unless the amount or amounts of the same, and the times when they are to be made shall be specifically stated in said mortgages, * * * *provided*, however, that Anne Arundel, Baltimore, St. Mary's and Prince George's counties be excepted from the said amendment and repeal of section two of article sixty-four, and that the said section of the said article still be and remain in force in the said counties." Laws of 1872, ch. 213.

The next step in the history of this legislation was taken by the Legislature in 1878, when it legalized the Revised Code of Public General Laws of Maryland compiled by Lewis Mayer, Louis C. Fischer and E. J. D. Cross, authorizing it to be "deemed and taken in the Courts of this State as evidence of the articles and sections of the present Code, and the subsequent acts therein codified." Laws of 1878, ch. 196. For some unexplained reason these three codifiers split the Act of 1872 into two parts, and numbered the Sections 43 and 44 in Article 66, entitled "Sale, Lease or Partition of Property in Equity."

The statute, now separated for the first time into two sections in the 1878 Code, appeared as follows:

"43. No mortgage, or deed in the nature of a mortgage, shall be a lien or charge on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage, and be specified and recited therein, and particularly mentioned and expressed to be received thereby at the time of executing the same; and no mortgage, or deed in the nature of a mortgage, shall be a lien or charge for any sum or sums of money to be loaned or advanced after the same is executed, except from the time said loan or advance shall be actually made, and no mortgage to secure such future loans or advances shall be valid unless the amount or amounts of the same, and the times when they are to be made, shall be specifically stated in said mortgages. * * *

"44. In Anne Arundel, Baltimore, St. Mary's and Prince George's counties, no mortgage, or deed in the

nature of a mortgage, shall be a lien or charge on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage, and be specified and recited therein and particularly mentioned and expressed to be secured thereby at the time of executing the same. * * *."

The next Code of Public General Laws was completed by John P. Poe in 1888. In this Code Mr. Poe printed the statute now under review in two sections as the three codifiers had done ten years before. But he changed the title of Article 66 to "Mortgages," and numbered the sections 2 and 3. The only change in the law during the period of ten years was made by the Legislature in 1882, when it struck out Anne Arundel and St. Mary's Counties from the list of four counties excepted from the provisions of the 1872 amendment, thus leaving only Baltimore and Prince George's Counties excepted therefrom. Laws of 1882, ch. 471. The Legislature adopted the Code of 1888 as a substitute for all laws then in force. Laws of 1888, ch. 74. Mr. Poe published another Code in 1903, but the great bulk of the edition was destroyed in the Baltimore fire, and he then prepared the Code of 1904. George P. Bagby, who compiled the Code of 1912, followed the arrangement of the Codes of 1888 and 1904 in all respects "largely because of the familiarity of the profession therewith." The statute under review was retained in the same form by Mr. Bagby in his Code of 1924, and by Horace E. Flack in the Code of 1939. Instead of adopting the Codes of 1924 and 1939 as substitutes for all existing laws, the Legislature authorized these Codes to be deemed and taken as evidence of the law. *Brenner v. Plitt*, 182 Md. 348, 34 A. 2d 853.

There is no question that a codification of previously enacted legislation, eliminating repealed laws and systematically arranging the laws by subject matter, becomes an official Code when adopted by the Legislature, and it becomes the latest expression of the legislative

will and, if the Legislature so provides, controls over all prior expressions on the subject. We, of course, do not undertake to conjecture what reasons prompted the three codifiers to split the statute into two separate sections in the Code of 1878. But inasmuch as the principal function of a Code is to reorganize the statutes and state them in simpler form, changes are presumed to be for the purpose of clarity rather than for a change in meaning. Even a change in the phraseology of a statute in a codification will not as a general rule modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code. *Boston & Albany R. Co. v. City of Boston,* 275 Mass. 133, 175 N. E. 740, 742; *Stearns v. Grahan,* 83 Vt. 111, 74 A. 486; *Sigal v. Wise,* 114 Conn. 297, 158 A. 891, 894; *Dennis v. Independent School District of Walker,* 166 Iowa, 744, 148 N. W. 1007; *Pacific Gas & Electric Co. v. Industrial Accident Commission,* 124 Cal. App. 303, 12 P. 2d 649; *McDonald v. Hovey,* 110 U. S. 619, 4 S. Ct. 142, 146, 28 L. Ed. 269; *United States v. Sischo,* 262 U. S. 165, 43 S. Ct. 511, 512, 67 L. Ed. 925. As this Court said in *Johns v. Hodges,* 33 Md. 515, 523, even though the Code supersedes the existing laws, yet in many cases a comparison of the provisions of the Code with the previous statutes *in pari materia* may afford a better opportunity to ascertain what is the existing law as enacted by the Code.

Where two statutes relating to the same subject are not irreconcilable, they should be construed together in harmony with the objects of the legislation, and all of their provisions should be given effect as far as reasonably possible, even though they were passed at different sessions of the Legislature and contain no reference to each other. *State v. Popp,* 45 Md. 432, 438; *City of Hagerstown v. Littleton,* 143 Md. 591, 599, 123 A. 140; *Public Service Commission v. Maryland Bay Company,* 176 Md. 59, 3 A. 2d 736.

The obvious purpose of Section 2 of the Mortgage Law is to afford the public, when about to deal with the owners of mortgaged property, accurate and reliable information as to the extent of the liens on the property and the times from which they become effective. *Baltimore High Grade Brick Co. v. Amos,* 95 Md. 571, 591, 52 A. 582. The requirements of Section 3 are not as strict as those of Section 2. However, these sections relate to the same subject and are not inconsistent. They are, therefore, *in pari materia.* It is true that these sections were not last re-enacted at the same time. Section 2 was re-enacted in 1945. Laws of 1945, ch. 923. Section 3 has not been re-enacted since 1924. Laws of 1924, ch. 224. Nevertheless, keeping in mind the rules of statutory construction, we find that it was the intention of the Legislature that Section 3 shall be an exception to Section 2. It is, therefore, our opinion that Section 2 does not apply to Baltimore and Prince George's Counties.

In 1924 the Legislature re-enacted Sections 2 and 3, adding the following provision to each section: "nor are the provisions hereof intended to apply to deeds of trust in the nature of mortgages or any other deeds of trust to secure bonds, notes or other obligations." Laws of 1924, ch. 224. The fact that the Legislature added this provision to each section confirms the conclusion we have reached. If the Legislature did not intend Section 3 to operate as an exception to Section 2, there would have been no reason to re-enact Section 3, for Section 3 is similar to Section 2 except that it does not contain the stringent provision inserted by the Legislature in 1872. Section 3 would be repetitious and superfluous unless it is construed as excepting the two counties from the provisions of Section 2. It is a natural presumption that the Legislature does not intend to use words in vain or to leave a part of its enactment without sense or meaning, but intends that every part of it shall be operative. Hence, the Court endeavors to avoid that construction of a statute which, in giving effect to one

part of it, will make another part superfluous and useless. *People v. Sholem*, 238 Ill. 203, 87 N. E. 390; *State v. Columbian National Life Insurance Co.*, 141 Wis. 557, 124 N. W. 502, 505.

In 1945 the Legislature re-enacted Section 2, adding the proviso that any mortgage may secure future advances not exceeding the aggregate sum of $500, provided that the full amount is used to pay "the cost of any repair, alterations or improvement to the mortgaged property." Laws of 1945, ch. 923. Here again the Legislature, by re-enacting Section 2 and allowing Section 3 to stand unrepealed and unamended, indicated that it intended Section 3 to be operative.

As Section 2 does not apply to Prince George's County, the chancellor should have overruled the exceptions to the foreclosure sale. We must, therefore, reverse the decree and remand the cause for further proceedings.

*Decree reversed and cause remanded, with costs.*