CHESAPEAKE BEACH HOTEL COMPANY OF CAL-
VERT COUNTY, A CORPORATION, PLAINTIFF,

*vs.*

JULIUS G. HALL, SHERIFF OF CALVERT COUNTY, IN THE
STATE OF MARYLAND, DEFENDANT.

*General liquor laws and special charter of corporation.    Stat-
utes: repeal by implication; not favored.    Injunctions:
to restrain criminal proceedings; allegations and
exhibits; hearing on bill and answer.*

Repeal of statutes by implication is not favored, and only
when two Acts are so plainly inconsistent and irreconciliable
that they can not stand together will the latter be held, by impli-
cation merely, to repeal the former.                         p. 652

Section 37 of Chapter 245 of the Acts of 1894, incorporating
the Commissioners of Chesapeake Beach, authorized the Com-
missioners to issue to the Chesapeake Beach Hotel Company
licenses to sell liquor, and Chap. 120, Acts of 1900, amending
that Act made it unlawful for any licensee to sell, etc., any
liquor between the hours of midnight and 5 o'clock in the morn-
ing, with permission to sell liquor at all other times; it was *held*,
that these Acts did not repeal the general Sunday laws, and the
right there given to sell liquor *"at all other times"* did not in-
clude the right to sell liquor Sunday.                       p. 653

A municipal ordinance restricted the running of slot ma-
chines to the boardwalk, the property of the Chesapeake Beach
Hotel Company, upon the payment by the owners of the ma-
chines of a license fee for each machine.    The Hotel Company,
by an agreement with a certain C. P., allowed him the exclusive
privilege to erect and operate such machines for a period of
five years in consideration of his paying to the Hotel Company
a certain commission on the gross receipts.    The said C. P. died
during the term, and his estate continued the business of the slot
machines; and upon a bill being filed by the Hotel Company to
enjoin the sheriff of the county from making arrests, etc., or
interfering with the slot machine business during the excursion
season, and while the County Court was not in session, etc., until

a Court of competent jurisdiction could pass upon the legality of such business, it was *held,* that the license and the agreement, etc., should have been filed or exhibited, or their absence accounted for, and that it should have been made to appear whether or not the said C. P. had been the owner of such machines.    p. 655

Where a plaintiff appeals to a court of equity to protect his legal rights, he must show a strong *prima facie* case in support of the right asserted, and show that irreparable or serious injury will result from the invasion of his right, the irreparable or serious injury he has sustained or will likely sustain, before such rights can be fully vindicated in the proper forum, being the equity on which the application for an injunction is founded.

p. 655

When a complainant seeks the intervention of a court of equity by way of injunction, he must make out a clear case, and if he has in his possession or can produce authenticated copies of papers or instruments in writing on which his equity rests, such papers must be filed in support of the bill.    p. 651

When the application for an injunction is heard upon bill and answer, the answer must be considered, and if they determine the equity of the bill in such a manner as would authorize the dissolution on motion to dissolve the injunction, the injunction ought not to be granted.                          p. 651

So far as they are responsive to the bill, such answers are to be taken as true, but new matters set up by way of avoidance, which can only be established by evidence, do not, in general, avail to prevent the issuing of the injunction.          p. 651

But where the Court is satisfied that the complainants will not suffer by not having an injunction issued at once, and testimony can be taken in a reasonable time, if the new matter be of a character that if proven would ultimately require the dissolution of the injunction, the Court has discretion to issue the injunction or not.                                       p. 651

*Decided November 12th, 1913.*

Appeal from the Circuit Court of Calvert County (BRISCOE, C. J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John B. Gray* and *William Hitz* (with whom were *Frederic D. McKenny* and *John S. Flannery* on the brief), for the appellant.

*Arthur W. Dowell* and *J. Frank Parran,* for the appellee.

BURKE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Calvert County, which denied the application of the plaintiff for an injunction, and dismissed the bill with costs to the defendant. This order was affirmed in a *per curiam* order filed October 31st, 1913, and the reasons upon which that order was based will now be stated.

The facts necessary to be stated are these: By the Act of 1894, Chapter 245, the inhabitants of Chesapeake Beach, in Calvert County, residing within certain specified limits, were "incorporated and created a corporation under the name and style of 'The Commissioners of Chesapeake Beach'." Large municipal powers were granted to the corporation. The inhabitants accepted the act of incorporation, and organized a municipal government under the powers conferred by the act, elected commissioners, and since has continued as a municipal corporation.

Section 37 of the Act of Incorporation made provision for the granting of licenses and the regulation of the sale of spirituous and fermented liquors within the limits of the corporation. It empowered the commissioners to issue to the Chesapeake Beach Hotel Company as many licenses as that company might require, and to certify to the clerk of the Circuit Court for Calvert County the number of licenses required. It was made the duty of the clerk to issue to the Hotel Company the number of licenses designated in the certificate of the commissioners, upon the payment of the sum

of $240.00 for each annual license. Licenses might be issued for a fractional part of any year. Two-thirds of the amount realized from the licenses was directed to be paid to the Board of Commissioners of Chesapeake Beach and applied to the general use of the corporation. It was made unlawful for any person to sell, offer for sale, or keep for sale, any intoxicating liquors, beer or cider, within the corporate limits, unless a license was first issued as provided by the Act. There was no restriction upon the hours during which a licensee might sell.

The charter of the corporation was repealed and re-enacted by Chapter 120 of the Acts of 1900. The two charges made by this Act, which affect the questions involved in this appeal, are as follows: "First, it was made unlawful for any licensee to sell, barter or give intoxicating liquor, * * * to any person whatsoever between the hours of 12 o'clock midnight and 5 o'clock in the morning, and all places where intoxicating liquors of any description are kept for sale shall be closed between the hours of 12 o'clock midnight and 5 o'clock in the morning, and shall not be opened between such hours for any purpose whatsoever; but any licensee may sell all such spirituous and fermented liquors, wines, cordials, soda and mineral waters to all other persons and at all other times by the drink or in quantities not to exceed five gallons at any one sale, but not otherwise. Secondly, the Commissioners of Chesapeake Beach were empowered to '*regulate, restrain, license and prohibit gaming of all kinds,*' both by the Act of 1894, Chapter 245, and the Act of 1900, Chapter 120.

The power of the Commissioners of Chesapeake Beach to cause licenses to be issued for the sale of liquors was limited to the Chesapeake Beach Hotel Company. No power was given them to cause such licenses to be issued by the clerk to any other person or corporation. The intention was to provide the Hotel Company with the exclusive privilege of selling spirituous and intoxicating liquors at Chesapeake Beach.

In 1904, the Commissioners of Chesapeake Beach passed the following ordinance: "Be it ordained by the Commis-

sioners of Chesapeake Beach this second Monday in May, 1904, that gaming, as specified in Chapter 120, section 13 of the laws of Maryland, passed in 1900, be allowed on the Boardwalk at Chesapeake Beach, and nowhere else. And be it further ordained, that the owner or owners of machines known as 'nickel in the slot,' be, and they are hereby required to obtain a license, signed by the president and secretary to the Board of Commissioners. Such license to cost $25.00 per annum, beginning May 1st in each year."

The Chesapeake Beach Hotel Company, of Calvert County, the appellant, was incorporated under the general laws of the State in May, 1899. It became and in now the owner of certain real estate and improvements thereon located in Chesapeake Beach, within the limits of the corporation, and known as the "Belvidere Hotel," "The Casino," "The Employees Building," and all the property known as the "Boardwalk." All these properties are leased by the Hotel Company to various persons for the purpose of establishing, maintaining and conducting hotels, eating houses and amusements of various kinds. It is alleged in the bill that "the exclusive right above granted to sell and dispense liquors, beer and cider in connection with said property, adds greatly to the value thereof, and has enabled, and does enable, the plaintiff to derive a rental from said property greatly in excess of what could otherwise be reasonably expected; and the various lessees of said property during the priod of more than ten years last past, and with the exception hereinafter referred to up to the present time, have been engaged lawfully and peacefully, under licenses duly issued out of the office of the clerk of the Circuit Court for Calvert County, under the seal of said Court and the hand of said clerk, in selling, in, or about such of the property and premises above referred to as are not situated on or abutting upon the Boardwalk, such liquors, wines, cordials, beers, soda and mineral waters as the numerous persons visiting Cheasapeake Beach, either for business or pleasure, have required and called for."

The bill sets out the ordinance quoted above, and alleges: "That on or about the fifth day of February, 1906, this

plaintiff did enter into a certain agreement with one Charles Popper, whereby for a period of ten years from said date the plaintiff granted unto the said Popper the *exclusive privilege* of conducting on the Boardwalk in said town of Chesapeake Beach, the business of maintaining and operating machines and devices commonly known as 'slot' or 'coin' machines, which are usually operated by dropping a coin, coins, money or tokens into a slot or slots in the device, in the hope or expectation of causing such machines to pay out money, and the plaintiff under said agreement receives as compensation for said exclusive privilege a percentage of the gross receipts derived from all of such machines so operated. Charles Popper has since died, but the representatives of his estate have continued to conduct said business under said. agreement, and the plaintiff has received, is now receiving, and will hereafter receive, a considerable income and profit from the operation of said machines as aforesaid, if such operation is not discontinued or interfered with by the threatened action of the defendant hereinafter mentioned."

The defendant on this record is the sheriff of Calvert County. He notified the plaintiff that he intended to stop the sales of spirituous and fermented liquors on Sunday at Chesapeake Beach, and that he would arrest all persons making such sales on that day. He also notified the plaintiff that he intended to stop the operation of slot machines, or other gaming devices, at Chesapeake Beach on any day, including Sunday. The bill alleges: "So insistent, persistent, and public have lately been the declarations of the defendant in the above regard, that this plaintiff, desiring ever and always to conduct itself as a peaceful and law-abiding citizen of the State, and to avoid even the semblance of opposition to the duly constituted authorities charged with the preservation of order and enforcement of law within the county, by persuasion exerted through its officers and agents upon its various licensees engaged in the sale of liquors or operating said so-called gaming devices, did cause numerous of them to refrain on Sunday last, the twentieth day of July, now current,

from making any such sales or conducting any such operations, all at a very material, but not exactly to be ascertained in dollars and cents, pecuniary loss, which was borne in part by said licensees, but in a greater part and measure by this plaintiff; and thus only was the good order of the municipality and its reputation for peace and quiet preserved. Notwithstanding all of the above, the defendant, Julius G. Hall, hath continued and still continues, to utter threats of arrest against the officers, agents and licensees of the plaintiff, and their employees, and thereby has caused various of them to become apprehensive of being arrested and held in confinement over the hours of Sunday, hoping that they will, because of such fear, refrain from the performance of their necessary duties on that day, and such threats will necessarily have the effect of causing many persons who would otherwise visit Chesapeake Beach, particularly on the Sabbath Day, as patrons of its various offerings, to abstain from so doing, all of which must, and inevitably will, result in immediate great and irreparable loss to the plaintiff. The plaintiff is advised by counsel, and believes, and therefore avers, that the business of selling liquors, wines, beers and cordials, and the business of operating slot machines, above referred to, as the same has been and is being conducted within the limits of the municipality of "The Commissioners of Chesapeake Beach," is lawfully and is being lawfully carried on under State and municipal licenses issued in pursuance of and strict compliance with the laws of the State of Maryland, applicable thereto, and if the defendant, Julius G. Hall, sheriff of Calvert County, shall be permitted to execute the course of action which he threatens to pursue in the immediate future, when the so-called excursion season at Chesapeake Beach is at its height, and when the grand jury of Calvert County and the Criminal Court thereof are not in session, and the question at issue cannot be submitted to the said grand jury or to such Criminal Court for determination until the November term of said Court, by or before which said excursion season will have ended, and unless this Honorable Court shall intervene

for its protection, the business of this plaintiff and its various lessees, above described and referred to will have been practically, if not entirely, destroyed, and this plaintiff will have suffered irreparable loss and damage, both in its reputation and property rights, with respect to which damage and loss as against the wrongs and trespasses threatened by the defendant, this plaintiff will be without any adequate remedy at law." The prayer of the bill was for a preliminary injunction to enjoin the sheriff "from in anywise interfering with the business or operations of this plaintiff, or any of its lessees, of the class and character specified and referred to in the body of this bill, and now being carried on at Chesapeake Beach, either by arrest or threats of arrest, made either by said defendant, personally, or through its deputies or assistants, or otherwise, on account of any supposed violation of the general laws of Maryland, until full opportunity shall have been afforded for either this Court, or another Court of competent jurisdiction, to pass upon and to determine the legality of said business and operations."

The Court set the application for hearing, and directed that a copy of the order and the bill of complaint be served upon the defendant. The defendant answered the bill, and denied that he had threatened or intended, in any manner, to close up, discontinue, or interfere with the legal or orderly conduct of the business of the plaintiff. He further averred that "he had been advised, and is of opinion, that notwithstanding the provision of the statutes as set forth in the seventh paragraph of said bill, that the sale of liquors wines, beers and cordials within the municipal limits of Chesapeake Beach on the Sabbath day, commonly called Sunday, and the setting up, maintaining and operating, or permitting to be operated within such limits on any day, including Sunday, of so-called 'slot machines,' or other gambling tables, devices and contrivances, at which money or any other thing shall be bet or wagered, is in violation of and contrary to the laws of Maryland. And he further avers that he has been advised, and is of opinion, that as the sheriff of said Calvert County, it is his duty, and

that he does intend, to prosecute all persons, including the plaintiff and his lessees, who may be found violating the laws of said State, so far as the same shall come to his knowledge, but that he has never threatened, nor does he intend to interfere with, close up, or in any manner obstruct the said plaintiff in the operation or prosecution of its lawful and orderly business."

The application for the injunction was heard upon bill and answer. It was said in *Riggs* v. *Winterode,* 100 Md. 439, that: "There can be no doubt that as the answers were filed before the application for the injunction was heard, they must be considered, and if it be found that they deny the equity of the bill in such manner as would authorize the dissolution on motion to dissolve, the injunction ought not to have been granted. So far as they are responsive to the bill they are taken as true. *Miller's Eq. Pro.,* sec. 578, and cases cited. But new matter set up by way of avoidance does not avail to prevent the issuing of a preliminary injunction. *Dougherty* v. *Piet,* 52 Md. 429; *Mayor, etc., of Baltimore* v. *Keyser,* 72 Md. 115. Although perhaps not necessary to refer to other authorities, the same rules are announced in 10 *Ency. Pldg. and Prac.* 1000-1002, where many cases are cited. It may be well to say, in this connection, that there may be cases in which the new matter set up in the answer is such as would justify the Court in refusing to grant the injunction at once, unless that be necessary in order to preserve the rights of the plaintiff, in case he finally establishes them. When the Court is satisfied that the plaintiff will not suffer by not having the injunction issue at once, and testimony can be taken in a reasonable time, if the new matter be of a character that would ultimately require the dissolution of the injunction, if proven, it would be useless to compel the judge to issue a preliminary injunction. Some discretion must be allowed him in such cases. On the other hand, when the answer is not responsive to the bill, but relies entirely upon new matter which can only be established, if at all, by evidence, and the status of the property or other rights

involved may be changed, it is proper to grant a preliminary injunction, if the allegations of the bill make a proper case for that relief."

The two legal questions raised upon the record are clearly manifest from the facts stated. They are: First, did the provisions of *sec. 37 of Ch. 120* of the *Acts of 1900,* quoted above, authorize or empower the plaintiff under the licenses granted to it to sell spirituous and fermented liquors at Chesapeake Beach on Sunday? Secondly, assuming that the Commissioners of Chesapeake Beach had the power under *section 13, Chapter 120* of the *Acts of 1900,* to allow gaming on the boardwalk at Chesapeake Beach, as was in fact permitted under the ordinance above set out, were the allegations of the plaintiff's bill sufficient to have warranted the Court in enjoining the sheriff from interfering with the gambling specified therein? Upon the first question, which is one of construction of the Act, there would appear to be little difficulty. There is no express repeal of the general laws of the State which prohibit the sale of beer and spirituous liquors on Sunday, and it can not be well contended from the general language employed, that the legislature intended to make such a radical departure from its settled policy upon this subject. The contention of the plaintiff on this branch of the case rests upon the proposition that the prohibition against the sale of whiskey and beer on Sunday contained in the general law has been repealed by implication, so far as they affect Chesapeake Beach. Repeals by implication are not favored in the law, and it is only where the two Acts are so plainly and palpably inconsistent and irreconcilable that they cannot stand together, that the latter will be held to repeal the former by implication. "It is only when the two Acts are repugnant and plainly inconsistent with each other that the rule applies. If the two Acts can by a fair and reasonable construction stand together, there is no ground on which it can be held that the latter Act operates as a repeal of the former Act. *Frostburg Mining Co. v. C. and P. R. R. Co.,* 81 Md. 35. We can discover no reason why the Court

should invoke the doctrine of repeal by implication. It is to be assumed that if the legislature had intended to work such a radical change as that contended for by the plaintiff, it would have so declared, or at least would have employed language from which its intention would have clearly appeared. In our opinion, the case does not call for the application of the doctrine of repeal by implication, because by the true construction of the *Act of 1900,* there is no inconsistency between its provisions and the general Sunday law. The purpose the legislature had in view in introducing into the *Act of 1900* the provisions relied upon by the appellant seems to us to be perfectly plain. It was to put a restriction upon the hours in which licensees might keep their places of business open and make sales of spirituous and fermented liquors, etc. There was no such restriction imposed by the Act of 1894. Licensees under that Act might have kept their places open all night, and sold all night, and it was doubtless thought desirable that some restriction should be placed upon this privilege, and, therefore, it was provided by the *Act of 1900* it should be unlawful for any licensee to sell between the hours of 12 o'clock midnight and 5 o'clock in the morning, and that he should keep his place closed during those hours, but that he might sell at all other times—meaning, evidently, at all times or at all hours in which it was lawful to do so. We think it would be a most unreasonable construction to give to the words "all times" the legal effect contended for by the appellant.

As to the second question. The averments of the bill upon this branch of the case are wholly insufficient to have warranted the issuing of an injunction. It is a well-settled rule of equity pleading that "if the complainant seeks the intervention of a court of equity by way of injunction, he must make out a clear case, and if he has in his possession, or can produce, authenticated copies of papers or instruments of writing on which his equity rests, such papers or instruments of writings, or copies thereof, must be filed in support of the bill, in order that the Court may see that he is entitled to the

relief prayed." *Nagengast* v. *Alz,* 93 Md. 522.  In *Lamm* v. *Burrel,* 69 Md. 272, the Court said: "It is quite a familiar principle, recognized by the 15th of the rules adopted by this Court for the regulation of the pleading and practice in courts of equity in this State, that every bill in equity must contain a clear statement of the facts upon which the plaintiff relies for relief.  It is equally well settled that to warrant the Court in issuing an injunction a full and candid disclosure of all the facts must be made.  There must be no concealment, and the *res gestæ* must be represented as they actually are.  *Johnston* v. *Glenn,* 40 Md. 200; *Garrett Co.* v. *Franklin Coal Co.,* 45 Md. 470.  The Court must be informed by the bill itself and its accompanying exhibits, if any, of every material fact constituting the case of the plaintiff, in order that it may be seen whether there is a just and proper ground for the application of so summary a remedy. Strong *prima facie* evidence of the facts on which the plaintiff's equity rests must be presented to the Court.  *Lauphei-mer* v. *Rosenbaum,* 25 Md. 219."

Tested by these rules, the averments of the bill with respect to the second question, stated above, are wholly insufficient to have warranted the issuing of an injunction.  The ordinance authorizing the operation of the slot machines on the board walk is set out, and it is alleged that the plaintiff entered into "a certain agreement" with Charles Popper, whereby for a period of ten years Popper acquired the exclusive privilege of maintaining slot machines on the board walk, and that under this agreement the plaintiff receives a compensation for this exclusive privilege "a percentage of the gross receipts derived from all such machines so operated." It is alleged that Popper is now dead, and that the representatives of his estate are now operating the machines "under said agreement," and that the plaintiff has received, is now receiving, and will hereafter receive "a considerable income and profit" from the operation of the machines.  There is no averment that Popper had taken out the license prescribed by the Act.  The license is not exhibited, and no excuse is given

for its non-production. If he had no license it is not pretended that he had a right to set up slot machines anywhere, and certainly, in the absence of the license, the plaintiff could not grant him ·the exclusive privilege or any privilege to operate slot machines. It is not alleged that Popper was the owner of the machines. None but, "the owner or owners of machines" could obtain a license under the ordinance. It nowhere appears that the representatives of Popper, conceding that he did have a license, have authority to maintain and operate machines on the board walk. The ordinance gives no such authority to the representatives of deceased licenses. The agreement, if in writing, should have been filed; if not in writing, its terms and provisions should have been fully disclosed. The broad and general statement of some of its provisions gives the Court very little information. Did it undertake to authorize the representatives of the deceased to maintain slot machines? To what percentage of the gross income therefrom was the plaintiff entitled? What amount did it, in fact, receive? If it be conceded that under such a contract the plaintiff acquired such a property right that a Court of Equity would protect, how can the Court tell from the vague and general allegations of the bill the extent of the injury suffered by the plaintiff or what injury he would sustain by the threatened acts complained of?

Where a plaintiff applies to a Court of Equity to protect his legal rights, he must show a strong *prima facie* case in support of the rights asserted, and, in addition thereto, he must show that irreparable or serious injury will result from the invasion of his rights—the *irreparable or serious nature of the injury* he has sustained, or will likely sustain, before such rights can be fully vindicated in the proper *forum,* being the equity on which the application for injunction is founded. The equities of the bill are denied by the answer, and for the other reasons herein stated, the order appealed from was affirmed by the *per curiam* order heretofore filed.

> *Decree affirmed, the appellant to pay the costs above and below.*