PUBLIC SERVICE COMMISSION *v.* MARYLAND BAY COMPANY.

[No. 79, October Term, 1938.]

60

*Decided January 18th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, and JOHNSON, JJ.

*J. Purdon Wright,* for the appellants.

*William A. Roberts,* with whom were *Samuel H. Feldstein* and *Roberts & McInnis* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Maryland Bay Company, a body corporate of the State of Maryland, is the plaintiff, and the Public Service Commission of Maryland is the defendant, in a bill of complaint filed on June 2nd, 1938, on the equity side of the Circuit Court for Anne Arundel County. The defendant demurred to the bill of complaint and answered at the same time, and after hearing, the chancellor overruled the demurrer, and set the cause down for hearing on bill and answer, pursuant to the provisions of section 405 of article 23 of the Code. From this order the pending appeal was taken.

The institution of this suit in a court of equity was for the purpose of securing a review and reversal of an order of the Public Service Commission of Maryland which rejected the application of the plaintiff for permission to operate a public ferry for hire between certain points on the opposite shores of the Chesapeake Bay. The Commission's refusal was based upon the conclusion that it was prohibited by law from permitting the operation of a ferry within the area desired by the applicant. The soundness of this conclusion is the principal question.

The bill of complaint avers the plaintiff's corporate existence and its powers, which embrace the transporta-

tion of passengers and freight upon Chesapeake Bay and adjacent waters; the ownership, lease and control of ferries and other vessels and their operation; the construction, acquisition and operation of docks, piers, channels and appurtenant facilities; the ownership, purchase, sale and lease of lands and their improvements, and, generally, to do the things and to acquire the accessories and equipment for its corporate purposes. It sets out that the defendant has the jurisdiction and power, pursuant to section 379 of article 23 of Code Pub. Gen. Laws (Supp. 1935), to grant the permission and approval for a public utility to exercise any franchise or right under any provision of law, which has not been theretofore exercised, whenever it shall, after due hearing, determine that such exercise is necessary or convenient for the public service.

The plaintiff desired to obtain the authorization specified for the exercise of its corporate powers and filed with the defendant on March 24th, 1938, an application for an order to permit, authorize and empower the plaintiff to operate, across the Chesapeake Bay, a ferry service between Sandy Point, in Anne Arundel County, to a point near Stevensville, on Kent Island, in Queen Anne's County, for the transportation of passengers and freight in intra-state commerce; and the plaintiff prayed that it be afforded a hearing on the matter, and be given such further relief and authority as might be necessary to accomplish the object sought. The bill of complaint further alleges that the application is new and original, and a copy of this application is filed as part of the bill.

The application was dismissed on May 11th, 1938, without its being set down for a hearing on the merits, on the ground that the defendant was without jurisdiction to authorize the establishment of a ferry across the Chesapeake Bay from Sandy Point to Kent Island, or in the immediate vicinity of these places, so long as an Act of the General Assembly of Maryland, passed at its January Session of 1935, and known as the Bay Bridge Act, remains in effect, or the restriction upon the establishment of a ferry or bridge within twenty miles of the

site of a certain proposed Chesapeake Bay Bridge continues. A copy of this order of the defendant is filed and incorporated in the bill by reference.

The bill of complaint recites that the plaintiff had, on October 28th, 1936, filed with the defendant an application for a permit to exercise its franchise, and that this application was dismissed on January 27th, 1937. On March 26th, 1937, the plaintiff made application for a re-consideration of this action, and this request was denied on April 28th, 1937; and, again, on May 25th, 1937, an application for a re-consideration was made and, likewise, denied. The complainant shows that the refusal in every instance was based on the same ground, that the defendant was without jurisdiction. The plaintiff next filed in the Superior Court of Baltimore City, on August 7th, 1937, a petition for a writ of mandamus to command the defendant to grant a public hearing on its application for a certificate of public convenience and necessity for the operation of a ferry service between the points named. A demurrer to this petition was sustained, on the theory that the remedy of the plaintiff had been a statutory appeal from the action of the defendant.

The plaintiff next here states that Order No. 33,058 of the Commission, which, as heretofore stated, was passed on May 11th, 1938, is final; and that the bill of complaint now under consideration is the only remedy at law or in equity which is available to it, and is an appeal from the order dismissing the plaintiff's application which was filed with the defendant on March 24th, 1938; and which embraces facts that were not available at the several times of the prior applications. These alleged changes and different circumstances are said to be:

(1) The abandonment of the Chesapeake Bay Bridge project contemplated in the Chesapeake Bay Authority Act (Acts of 1935, ch. 330, p. 743); article 89B, sections 85 to 104, inclusive, of Public General Laws (Supp. 1935); and

(2) The passage of chapter 356 of the Acts of 1937, and the assumption of jurisdiction and duties by the Board created by this Act; and

(3) The requirements of residents and merchants of the State which render necessary an adequate ferry service in the vicinity of the route proposed.

The plaintiff avers that the defendant's Order No. 33058 is unlawful and unreasonable and null and void; and is in violation of the Constitution of Maryland; and that chapter 356 of the Acts of 1937 materially modified, amended and superseded the Chesapeake Bay Authority Act (Acts of 1935, ch. 330) with respect to the construction and operation of ferries. Furthermore, it is declared that under the provisions of sections 404, 405, and 407 of the Public Service Commission Law of Maryland (Code, art. 23), the Circuit Court for Anne Arundel County has jurisdiction to set aside, vacate and amend Order No. 33058 of the defendant.

The plaintiff alleges that it has established its right to a certificate or finding of public necessity and convenience as required by article 23, section 379, of the Public Service Commission Law; and that it will show that it has a well conceived plan to afford service over the proposed route, which is the shortest on Chesapeake Bay, without interference with small boat traffic; that it is financially able to conduct the enterprise; that it controls practicable and adequate terminals at Stevensville and Sandy Point; and that it is prepared to proceed promptly with the construction necessary to establish service, which is now inadequate; and, further, that the plaintiff has expended large sums of money and incurred large obligations in connection with the proposed ferry service; and that the refusal of the defendant denies to the plaintiff the right to exercise its franchise and deprives it of its property without due process of law.

On allegations thus stated in summary, the relief prayed, in addition to that of general relief, is:

(1) That said Order No. 33,058 of May 11th, 1938, be declared null and void.

(2) That the Bay Bridge Authority Act (Acts of 1935, ch. 330) be declared null and void in so far as it is a bar to the action of the defendant in approving or denying on its merits the application of the plaintiff.

(3) That the application of the petitioner for a certificate of convenience and necessity be approved; and that the Order No. 33,058 be so amended.

The proposed ferry service is admittedly within the distance of twenty miles from the site of the bridge contemplated by the Acts of 1935, ch. 330.

The demurrer and answer filed by the defendant raises, first, the sufficiency of the averments to justify equitable relief; and, secondly, issues of fact on all the material allegations upon which the relief sought is founded. Since the demurrer was heard and over-ruled, and the appeal comes from that decision, the facts alleged must be taken to be true for the purposes of a review of the action of the chancellor on the demurrer. The problem presented by the demurrer will depend for its solution on the meaning of the statutes which relate to the construction of bridges and the operation of ferries for the use of the public in traversing the Chesapeake Bay.

Under the provisions of chapter 330 of the Acts of 1935, nineteen new sections are added to article 89B of the Code of Public General Laws of Maryland, title "State Roads," as enacted by chapter 539 of the Acts of 1931, and its amendments. These new sections followed section 74 of the article and were numbered 75 to 93, inclusive, and are now codified in the 1935 Supplement of the Code (Flack), in article 89B, as sections 85 to 103, inclusive. Section 2 of the Act of 1935 (now section 104 of article 89B of Code) declared that, in so far as the provisions of these sections are inconsistent with the provisions of any other act, general, special or local, the provisions of chapter 330 are controlling.

By these sections a new official body, to be known as the Chesapeake Bay Authority, was created, and its duties and powers defined. It was declared to be a body corporate and politic of three members, whose terms of office of the original members should be respectively two, four and six years, and as these terms expired the terms of members who should succeed in the office would be of six years. The corporate existence of this body is limited

to ten years, and thereafter until all liabilities and obligations have been met and paid or otherwise discharged. On its final extinction, all its rights and properties shall pass to the State of Maryland.

The numerous provisions, conditions and limitations of the enactment will not be here set forth, except as may be pertinent to the present questions. The fundamental objects of the legislation are to furnish the agency power and funds (1) to construct a toll bridge, with its approaches, across the Chesapeake Bay, from a point in Baltimore County, over Hart Island and Miller's Island to a point near Tolchester, Kent County; and (2) to acquire, maintain and operate for hire the ferry line then in private ownership, use and management from Annapolis to both Matapeake and Claiborne or to either of these points. Among the many powers specifically granted were those to acquire the bridge franchises of the Chesapeake Bay Bridge Company and the assets and franchises of the Claiborne-Annapolis Ferry Company, as these private corporations enjoyed franchises which, unless acquired, were in conflict with the proposed public works and enterprises.

The statute contained the limitation that, if no contract should be made by the Chesapeake Bay Authority for the construction of the contemplated bridge within the period of two years from the passage of the Act, "all of the rights, powers, duties and obligations of the Board with respect to the acquisition, maintenance and operation of the Ferry, and the payment of the debt service requirements of any bonds issued for the purchase of the Ferry shall be taken over, transferred to, and shall thereafter be exercised and performed by the State Roads Commission of Maryland to the same extent as if the State Roads Commission had been named in this Act [sub-title] instead of said Board. And in such event, it shall be the duty of said Board to transfer to the State Roads Commission all of the assets of the Ferry, and acquired with the Ferry Property, and all books, records, documents in any manner relating to the Ferry, its acquisition and operation." Section 76 (sec. 86).

The effect of a failure by the Authority to enter into a contract for the construction of the bridge, on the site designated, for a period of two years from the passage of the Act, is not to deprive the Authority of its powers with reference to the bridge; but only to deprive it of its rights, powers, functions and obligations so far as the specified ferry is concerned, and to transfer and impose its delegated corporate powers and functions with regard to the ferry project upon the State Roads Commission of Maryland, which, in this contingency, has imposed upon it all the powers, duties, rights and functions with respect only to the particular ferry service, as though the State Roads Commission had been originally named in the Act in the place and stead of the Chesapeake Bay Authority. Thus, during its corporate life, there is no limitation of time imposed by the statute within which the Chesapeake Bay Authority would, because of delay, forfeit its corporate powers with respect to the particular bridge authorized by the Act. The incorporation of the mentioned condition of time with respect to one undertaking and not to the other may be ascribed to the circumstance that the ferry service was in actual operation by a public service corporation, but the public bridgeway was not in being but in contemplation. The first existed, but the second had to be created. The distinction is observed in section 77 (87), and in its sub-section (h) the power is granted "To acquire the bridge franchises of The Chesapeake Bay Bridge Company, and subject to the rights of The Chesapeake Bay Bridge Company under its existing franchises, but without any limitations as to the time of commencement and completion, to construct" the particular bridge authorized. The rights, functions and franchises of the Authority are created by chapter 330 of the Acts of 1935. The Authority's exemption from any of the limitations, restrictions, conditions, taxes or other requirements imposed by sections 44 to 55 of article 89B, sub-title "Chesapeake Bay Bridge" (Chesapeake Bay Bridge Company), are declared by section 89 (99), sub-sec. C, of chapter 330, and are wholly independent of the provisions of

chapter 109 of the Acts of 1935. The last named statute is an amendment of chapter 539 of the Acts of 1931, and had reference to the tax exemption and the duration of the franchise of a particular corporation, the Chesapeake Bay Bridge Company.

It is, therefore, clear that it is a misconception of the language of chapter 330 of the Acts of 1935, to argue that all power of the Chesapeake Bay Authority to construct the proposed bridge ceased when the contract for its construction was not made within two years after the passage of this Act. The plaintiff in this cause contends that a contrary view is supported by the opinion in *Wyatt v State Roads Commission*, 175 Md. 258, 1 A.2nd 619. The court there had primarily under consideration the constitutionality of chapter 356 of the Acts of 1937. After a full discussion of the problem and the statement of the reasons upon which chapter 356 was held free of objections on constitutional grounds, the subordinate question, of conflict between the provisions of chapter 330 of the Acts of 1935 and of chapter 356 of the Acts of 1937, was briefly treated, and the conclusion concisely stated that, should there be any inconsistency, the conflict would be resolved in favor of the later Act. At the head of the single paragraph in which this entire matter is discussed, a brief preliminary summary is given of some of the terms of chapter 330. In the course of this synopsis, which was in nowise designed to be a definitive construction of chapter 330, it was set out that the General Assembly had "created a 'Chesapeake Bay Authority,' to erect a bridge. * * * Construction was to begin in two years * * * or the authority to build was to cease."

The narrative quality of the statement, and the absence of an intention to give a construction of the language used in chapter 330, find emphasis in the further circumstance that nowhere in chapter 330 is the condition of time made to depend upon the period within which construction was to begin. The words of the statute plainly declare it is the failure to enter into a *contract* for the construction of the bridge that terminates the

power and duties of the Chesapeake Bay Authority with respect to the authorized ferry enterprise alone. The rights, powers, duties and functions of the Chesapeake Bay Authority remain, however, unimpaired and undiminished and endure with respect to the bridge project. The effect of a failure to contract for the construction of the bridge is simply to substitute the State Roads Commission for the Chesapeake Bay Authority in the matters which pertain to the ferry project. The assertion "Construction was to begin in two years * * * or the authority to build was to cease" is indisputably not referable to any language employed in chapter 330, and it was not so intended.

The statement, however, is correct with reference to the franchise and authority of the corporation known as The Chesapeake Bay Bridge Company. Acts of 1935, ch. 109, sec. 54, Code (Supp. 1935), art. 89B, secs. 45-55. As has been seen, the legislation with respect to this company does not create nor limit the rights, functions and franchises of the Chesapeake Bay Authority, which by sub-section C of section 89 of the Acts of 1935, ch. 330, is exempt from any of the limitations imposed by section 54 of article 89B of Code, Acts of 1935, ch. 109, sec. 54. So, if the Authority should acquire, as empowered, the bridge franchises of The Chesapeake Bay Bridge Company, the Authority would be without any limitation as to the time of commencement and completion.

A reference to chapter 109 of the Acts of 1935, inserted after the sentence quoted, limited the application as intended and as now it must be understood.

The State assures to the Chesapeake Bay Authority its use of the lands lying under the waters over which the projected bridge may be constructed. Section 89 (99), sub-sec. B. She, also, declares by sub-section D that: "D. Subject to the existing franchises of the Chesapeake Bay Bridge Company and of the Claiborne-Annapolis Ferry Company and any other existing franchises respecting a bridge or ferry over the waters of the Chesapeake Bay, no person, partnership, association or corporation, private or

public, and no political sub-division of the State, shall be authorized, and it shall be unlawful for any of them to construct or operate, and the State hereby agrees that it will not construct or operate, any bridge or ferry over the waters of the Chesapeake Bay at a distance less than twenty miles from the Bridge to be erected in pursuance to this sub-title, until the Bridge bonds together with interest thereon, with interest on any unpaid installment of interest, and all costs and expenses in connection with any action or proceedings by or on behalf of the holders of such bonds are fully met and discharged; provided that nothing herein contained shall affect the right of any person, partnership, association or corporation, or the State or any of its political sub-divisions to construct or operate any bridge or ferry as the holder or assignee of any such existing franchise, or of the purchaser of any existing bridge or ferry operated pursuant to any such existing franchises."

If these provisions are effective, the plaintiff is not entitled to operate the ferry service proposed, because the operation of the ferry would be less than twenty miles from the authorized bridge "across the Chesapeake Bay, from a point in Baltimore County, over Hart Island and Miller's Island to a point near Tolchester, Kent County, Maryland." Code (1935 Suppl.), art. 89B, sec. 85(d), p. 1196.

The plaintiff asserts that this provision of chapter 330 is repealed by chapter 356 of the Acts of 1937, upon the theory that a subsequent statute which revises the whole subject matter of a former one and is clearly intended as a substitute must operate as a repeal, although it contain no express words to that effect. The principle stated is well recognized, but the presumption is against an implied repeal, and in the appeal of *Wyatt v. State Roads Commission, supra,* it is held that both statutes are in effect, and there is no repeal of any provision of the earlier statute except and to the extent that there is an irreconcilable inconsistency between the two acts, when the later act will prevail to the extent of the conflict.

It should be observed that chapter 330 of the Acts of 1935 added nineteen new sections to article 89B of the Code of Public General Laws, under the sub-title "Chesapeake Bay Bridge Authority" as now codified in the 1935 Supplement (Flack) of the Code, secs. 85-104, pp. 1196-1208, and that chapter 356 of the Acts of 1937 does not purport to repeal these sections or any provision of them, but declares the new enactment to be an addition of eighteen new sections of the same article, and that they are to follow section 104 (the last section of chapter 330) in consecutive sequence under the designation of sections 105-122, inclusive, under a new sub-title "Revenue Bonds." Furthermore, under the heading "Alternative Method" section 121 makes this reservation: "The foregoing sections of this sub-title shall be deemed to provide an additional and alternative method for the doing of the things authorized thereby and shall be regarded as supplemental and additional to powers conferred by other laws, and shall not be regarded as in derogation of any powers now existing." Acts of 1937, ch. 356, sec. 121. It is accordingly obligatory upon the court to give effect to the provisions of chapter 330 of the Acts of 1935, in accordance with the clearly expressed intention of the General Assembly, subject only to the qualification that the later act would prevail in the event of an irreconcilable repugnancy in the terms of the acts, which makes inevitable the conclusion that there was an intention to repeal by the later act some portion of the earlier one. *Endlich on Interpretation of Statutes,* sec. 210.

The two statutes are not irreconcilable and mutually repugnant and, therefore, should be construed both together in harmony with the objects and tenor of the legislation on the subject. *Generalia specialibus non derogant. Endlich on Interpretation of Statutes,* sec. 223.

The subject matters of the two acts are different. The first is a particular one as it is directed towards special objects. Its provisions apply to the construction of but one intra-state bridge over the Chesapeake Bay along a definite line between specific terminal points; and to

the acquisition and operation of an existing intra-state ferry in service between designated parts of the Chesapeake Bay and its tributaries, under the ownership and management of a private carrier. The second statute is general with respect to certain classes of bridges and tunnels, either wholly or partly within the state, except in so far as provision is made by substituting legislation for their construction, when the sections of chapter 356 are declared to provide. "an additional and alternative method for the doing of the things authorized thereby and shall be regarded as supplemental and additional to powers conferred by other laws, and shall not be regarded as in. derogation of any powers now existing." Section 121. It should be observed further that the statute is not operative unless the construction of the bridge or tunnel shall have the specified approval of a Bridge Supervisory Committee, which is created by the Act, and the cost of the project, as estimated by the State Roads Commission, shall exceed the sum of $750,000. Thus the later act does not purport to cover the whole subject matter of bridges and tunnels. Moreover, the later statute has no general application to ferries. The only provisions on that subject are in reference to competing bridges, tunnels and ferries. It is provided by section 117 that, so long as any bonds which have been issued under the authorization of chapter 356 remain outstanding, no bridge or tunnel for the use of the traveling public shall be constructed and operated by any county, municipal corporation or political sub-division of the State or by any person, partnership or corporation, and no franchise shall hereafter be granted for the operation of a ferry, within a distance of ten miles from the location of any bridge or tunnel constructed under the provisions of the statute, except under a written permit granted by the State Roads Commission after an investigation and hearing as to the public necessity and the effect upon the toll revenues and the security of the revenue bonds issued for the construction of such bridge or tunnel. It will be observed that the bar against the granting of a franchise for the operation of a ferry is con-

ditional, but the prohibition of the earlier enactment with respect to a particular bridge is absolute. The second power granted by chapter 356 in relation to ferries is that the State Roads Commission may acquire, maintain and operate any ferry which is in operation within a distance of ten miles from the location of a bridge or tunnel, and may purchase ferries operating at a greater distance, if an investigation would establish that its operation would affect the revenues of the bridge or tunnel constructed under chapter 356, so as to impair the security of the bonds issued for the particular public work affected. The Commission is not bound to operate the ferry when acquired, and may discontinue its use and liquidate its assets. Whatever the cost incurred in this behalf is declared to be a part of the cost of the bridge or tunnel. So, whatever action is authorized in reference to ferries under Chapter 356 is subsidiary and auxiliary to the operation of the toll bridges and tunnels, which are the primary objects of the legislation.

There are other important differences between the acts in purpose and scope, in their respective governing or advisory bodies, in management, control, in methods of financing the projects, and in the obligations assumed by the State. These differences are apparent, and need not be further elaborated.

No conflict is perceived in the respective provisions with reference to the distance of a proposed ferry from a bridge before the ferry's operation may be permitted. The subject matters of the two statutes are different and the language of each is restricted to its own object or subject. Moreover, there can be no repugnancy between the two statutes because, as has been seen, the second statute exempts from its exclusive operation the bridge and ferry and the provisions in respect to them which constitute the subject matter of the earlier statute. Even if this exemption were not found in the second act, both statutes are susceptible of being effective, each as the governing rule in the class to which it is applied. The doctrine is that neither statute should fail but that both should prevail unless prevented by irreconcilable re-

pugnancy. *Chesapeake Beach Hotel Co. v. Hall,* 121 Md. 643, 652, 89 A. 445; *State v. Gambrill,* 115 Md. 506, 511, 81 A. 10; *Frostburg Mining Co. v. Cumberland & P. R. Co.,* 81 Md. 28, 35, 31 A. 698.

The first statute is directed towards a particular bridge to be erected over the Chesapeake Bay between definite terminals, and the prohibition of the future construction or operation of any other bridge or ferry over the waters of the Chesapeake Bay within twenty miles of this specific bridge to be erected is an inhibition whose duration is in accordance with the limitations imposed by the terms of chapter 330, a special statute. Hence there is no inconsistency between these particular provisions with reference to a single object, and the subsequent general and different provision with respect to all tunnels and all other bridges which are to be constructed under the later act. Instead of its text showing that the general act was intended to include the cases within the special act, or of the nature of the general act indicating clearly that no exception was to be made of the object within the special act, section 121 of the general act (chapter 356, Acts of 1937) indicates that the later act was an alternative or additional method for doing what was authorized. In this view of the case, the plaintiff, which was incorporated under the general incorporation statute of this state on October 6th, 1936, received its articles of incorporation subject to chapter 330 of the Acts of 1935, and subject to such modifications as by law might be made from time to time. Since the plaintiff had no corporate existence until after the enactment of chapter 330, the operation of that legislation was not subject to any existing franchises of the plaintiff corporation with respect to a ferry over the waters of the Chesapeake Bay. In fact, by its own allegations, the plaintiff has never received any authorization to operate the proposed ferry, and, so long as the plaintiff comes within the inhibition of chapter 330 of the Acts of 1935, it is not entitled to receive from the Public Service Commission of Maryland permission to operate the proposed ferry; and it would be unlawful for the plaintiff so to operate a ferry.

A number of other questions have been argued upon which the court now expresses no opinion, as the point discussed, and the view here expressed, are determinative of the cause. For error in not sustaining the demurrer and not dismissing the bill of complaint, the order of the chancellor will be reversed.

The defendants sued out a writ of diminution and a supplemental record was filed. A portion of the record before the Public Service Commission was thus presented to the court, on this appeal. It formed no part of the bill of complaint, which, with its exhibits, was before this court on the original record, with the combined demurrer and answer of the defendants, the order and opinion of the chancellor, and the direction of counsel for the appeal. Then followed seven pages of the record, which present the contention and action of the parties with respect to the incorporation in the record of certain proceedings before the Public Service Commission in connection with the controversy when it was before that body. These seven pages, and the record brought up under the writ of diminution, and printed in a separate volume of over eighty-four pages, were wholly extraneous to the question on demurrer, and the plaintiff should not be taxed with costs thereby caused. The plaintiff will be required to pay the costs, except the costs incurred by the inclusion in the record and printing (1) of the matter found on pages 37 to 43, both inclusive, of the record, and (2) of the matter in the record returned under the writ of diminution.

> *Order of court of August 3rd, 1938, reversed and bill of complaint dismissed, with costs to the appellants, except that no costs nor expense of printing shall be taxed against the appellee with respect to the costs incurred by the inclusion in the record and printing (1) of the matter found on pages 37 to 43, both inclusive, of the record, and (2) of the matter in the record returned under the writ of diminution.*